Your Honor, this case on document 2-15-1263. Catherine Sondergaard, plaintiff's appellant, v. Herbstman, M.D., defendant's applicant. Are you ready to proceed? Thank you, Your Honor. Mr. Steven Herbstman, are you ready to proceed? Thank you. Good morning, everyone. Mr. Gartsky, on behalf of the appellant, are you prepared to proceed? I am, Your Honor. All right. Then at this time, you may proceed. Good morning. If you'll please the Court. We're here before you on a case of a medical malpractice issue. And the issue, or perhaps the fulcrum of this case, is whether the defendant, doctor in this case, was properly allowed to argue that a car crash was responsible for nerve damage to my client. And the issue of setting aside whether or not blunt trauma can cause nerve damage to a person and sever nerves and other things that were found in subsequent surgery, setting aside whether blunt trauma can actually do that, the issue before this Court is simply this. Was there ever any evidence that this woman actually incurred blunt trauma in a car crash, which did happen, but whether she actually incurred blunt trauma to her wrist? There was no evidence ever presented as to the effects of a car crash on her condition. Is that what you're saying? There was nothing in those facts that showed that she ever received any injury to her left wrist. In fact, on cross-examination, Dr. Herbstman admitted that there are no ER records that show that she had injury, that his examination records show no injury, no bruises. And as he stated, in order for you to have this blunt trauma causing neuromas, causing all these problems that he subsequently blamed on this car crash, one would need, as he said, deep, deep bruises. The day after this car crash, Dr. Herbstman examined my client, and there was no notation, and he admitted he saw no bruises to her wrists. Does the defendant himself testify as to the connection between the accident and the plaintiff's condition, or was that Dr. Farrell who also opined that an issue, or who gave the opinion the accident was the problem? Dr. Herbstman. Curiously, Dr. Farrell stared around that. Dr. Farrell's testimony consisted of simply two things. That is to say that it's okay to cut over the median nerve in certain instances when there's an anatomical anomaly. He didn't say it was ever okay, but under those circumstances, you can cut over a nerve, because one of the issues, whether you cut over a nerve, he said, if there's an anomaly and you cut over a nerve, it's not the greatest thing, but there's an anomaly and it can happen. That's what he said. The other aspect of his testimony was simply this. Dr. Herbstman did not cut the median nerve because Dr. Herbstman said he didn't cut the median nerve. That was his opinion. There was nothing else in there that he stated about a car crash, And I find it curious that they particularly avoided that when they presented their expert witness. He did not opine on the car crash. The only person who ever did opine that somehow a car crash, in which this man did not visualize any bruising, and there is no testimony at any point that an injury occurred. Let me ask you this question. Isn't the defendant arguing that the plaintiff complained of atrophy and weakness following the car accident? Is that in the record? Well, the atrophy and weakness that we're talking about is when she sees Dr. Lamberti. It's noted in her record that she has atrophy and weakness. The weakness part of this was there all along. The last visit she had with Dr. Herbstman in October of 2010, I believe, was that she was still experiencing carpal tunnel syndrome. That's in his records. He subsequently, at testimony, says, oh, no, I didn't mean the carpal tunnel. I thought the record shows she's still experiencing carpal tunnel syndromes. She still had numbness. As Dr. Lamberti stated later, atrophy takes a while to take place, particularly when you don't have a complete severed nerve. In this case, it was four fascicles that were injured in the nerve. And so you have limited range. She still could do some things. She could still make a fist, as Dr. Lamberti said. She could still move her thumb and fingers. And she could touch her little finger. Right. Well, all of her fingers, but the little finger is the tough one. Right. She could do that before the surgery and after the surgery. The issue with the nerve damage comes with the test with the thumb, as Dr. Lamberti stated. The nerve damage just showed up when he did the thumb pressure, and her thumb collapsed. Here's one question I want to ask you. I mean, how do you respond? You know, they're going to make the argument. You said this is sheer speculation and guesswork. There's no evidence whatsoever to tie any change in the condition to this accident. They're going to point to the atrophy and they're going to point to the weakness as, you know, whether we debate the strength or the quality of the evidence, they're going to say that's some evidence to base an opinion on. Well, there are two points here. First, atrophy, to begin with, we still have no injury to her wrist by anybody, not by the doctor and not by the witness. And that's really what I find disturbing about this. One would say, well, this shows up because of this, but the fact of the matter is her previous visit for this in October, a month before that, she still had carpal tunnel syndrome and she still had numbness. So at what point does atrophy begin to show up in her? I can't tell you that. And to say that atrophy can be attributed to a car crash that caused nerve damage for an impact that we never saw, never observed, despite the fact that we have deep bruises, becomes a large stretch. That's the problem I've always had with this case is I've looked at this, I brought my motion to bar, I listened to this man speak, and it always came back to the same issue is nobody observed, nobody saw any injury to her wrist. And as is conceded, deep, deep bruises, personally, personally, I don't think that a bruise can cause a severing of the nerve. And there are a whole lot of issues I've raised in the briefs about the idea of if he really cauterized the retinaculum, then how did it grow back and how did the nerves get entangled? There are a whole lot of questions that just don't make sense. I think that you made an objection at trial to the defendant doctor giving this opinion. I did. When did you do that? It is the record of... You did a motion to bar, a motion in limine. Right. And what did the judge do with that? The judge said in my motion to bar that she wanted to essentially said she wanted to have this play out. My issue with that, Your Honor, is that she correctly identified Dr. Herbstman as a 2 to 13 expert. All this was done by evidence deposition. She had everything in front of her at that point. This is not anything that needed to be played out. The simple issue that I brought on the motion to bar is there is no evidence that there was an impact to the wrist. It was a cover patch. But didn't she say that, as she talked about this, I wouldn't enter an order on principle that speculative evidence, and that's what you call it throughout your brief, speculative evidence is not allowed because there is a point of order in limine that is so broad and not specific. I wouldn't waste my time with it. I would have to hear it. So now she would have to hear it. When did you make the actual objection to the speculative evidence in the trial procedure? It shows up. The record is 1208. And the question is, by defense counsel, you're talking about the accident and the impact. Yes, it would be serious. Objection overruled. At that point, I thought it was over for me. And I really felt that the judge at that point was going to let everything in. But when the objection occurred, you didn't identify the purpose of the objection, did you? Actually, I was able to get out relevance. I would have added speculation as well, but that was already in my briefs. The issue at this point is why are we talking about something that is not relevant to this injury? What he's saying is just rank speculation. He doesn't know. As a matter of fact, he does know. And that's really my issue. Well, aside from that, it could be argued and they've argued that, you know, you need a contemporaneous objection to the admission of the evidence at the time that it's offered, notwithstanding the court deferring the ruling until the context of the evidence came in. We're going to point to you didn't preserve it for review because you didn't specify your objection at the time it was offered. So what's your response to that argument? Well, I did object and I did say there's an issue of relevance. And I do think that there's a corollary to this whole idea that it is not relevant to this case. It has nothing to do with this case. So your objection here on appeal is solely that it was not relevant? No, it is. With all due respect, my issue is that that's the objection that you preserved in the trial record. It is the only comment. Did the trial court ever preclude you from? I mean, I appreciate in the middle of the trial it's an objection, move on. But at the next break, did you ask to make a record on it or ask for a sidebar or anything to further enhance your position? I did not ask for a sidebar for the next break. I guess for purposes of this, I refer back to what had happened in the motion in Limine where she states that my inclination is to deny this. I had brought out a cross-examination because that was the parameters that I was given. I recognized that she was going to allow this all in. I wasn't happy with it. I didn't want to have this ever in front of a jury because I just didn't see it. But I got out through him that he didn't see any bruises. If there are no records, he has no information at all that she hurt her wrist. And then we come back, and I raise the objection. Why is this at all relevant? And she says no. And I guess at that point I assumed it was over. There is no other further record on that point. That is true. But also, Your Honor, I don't think I wanted to make a bigger issue out of this. And I could have done a sidebar. I appreciate you don't want to make a bigger issue in front of a jury. That's why I asked if you took the opportunity to do it at a later time. No, I didn't. Okay. Is there anything in this record that indicates that Dr. Lamberti ever reviewed the original records of this particular surgery? Of either hand, actually. It doesn't make any difference. But in particular, the left hand. He did not. And the reason that's unimportant in this case is because of what Dr. Lamberti's testimony was. And it is simply this, that an incision was made directly over the median nerve and that a surgeon's cut caused this. That's it. Well, it was also that he also said it's obvious he didn't look at it because he thought it was endoscopic. No, no, no, no. The issue of the size of the scar comes into play simply because it's very, very small, so small that the doctor, when he looked at it, as small as it was, he couldn't understand that if it was an open procedure, how this doctor could actually see what he was doing. It's an aside criticism of it, but the idea being it was extremely small for an open procedure. But Dr. Herbstman's actual report indicates that he did see things, correct? Well, and that's always the issue, and that goes back to Dr. Farrell as well. I didn't cut the median nerve because I saw the median nerve, and the median nerve was intact. He also said, I completely cut the retinaculum and I cauterized so it couldn't grow back. But then we have what happened is the retinaculum growing into the severed median nerve. Well, how could that happen if it's cauterization? If you cauterize, that shouldn't have happened, and yet the subsequent surgeon in Unrobotic, that's exactly what happened. So he says, I didn't cut it because I didn't cut it, but nobody says that it wasn't cut. So how does it become cut? And that's... Counselor, you finished your thought, but your time is up on opening argument. Do you want to finish your thought? Just simply, there is no debate that the nerve was severed. The fact that Dr. Lamberti did not review records is irrelevant to the issue that the nerve was cut. No one denies it. There's nothing in the record that shows that this car accident had anything to do with that, and yet that was the fulcrum of the argument made by Dr. Herbstman. I feel that that was speculation. I believe that the court knew that prior to going into this. I think at least this warrants a new trial because I just think that it was improper speculation and should not have been heard. Thank you. You'll have additional time to respond after the appellee's argument. Mr. Grand, on behalf of the appellee, are you prepared to proceed? Yes, I am, Your Honor. Good morning, Your Honors. Again, Karen DeGrand for the defendant appellee, Arnold Herbstman, MD. May it please the court and counsel. Plaintiff's attack is on a jury verdict, on a judgment entered on a jury verdict. And I believe what we've heard for the last 15 minutes is basically a recitation of all of the facts that were in dispute and in conflict that the jury heard and made judgments about. And I believe there are a lot of reasons to affirm. I'm going to try to focus on three of them. The fact that there was forfeiture of what the plaintiff calls the fulcrum of the case, and I actually take issue that that was the fulcrum of the case. The foundation for the defense testimony and the sufficiency of the evidence, and also the lack of prejudice from the trial error that the plaintiff portrays as the fulcrum of the case. But I believe the trial record points in a different direction. On the issue of forfeiture, I think the court sees what it was that occurred. There is an objection relevance, and he feels, based upon the original conversation with Judge Mullins, that he's not going to win it anyway. So what else should he have done? Well, Your Honor, the law does require more than that. The law, even if the judge had actually denied the motion and there's no order in the record or any colloquy in the report's procedure or proceedings that shows that there was a denial, even if there had been an order entered in that regard, the objection has to be renewed at the time of the testimony. And the plaintiff cites two cases on this point, neither of which aid the plaintiff's case on this issue. This McMahon case, which was out of the Fourth District, which was overruled by the Illinois Supreme Court and involved a much different situation where we were talking about a pretrial motion that was brought about testimony, but this motion in this McMahon case was brought within minutes of the witness going on the stand. We need a contemporaneous objection, and the one objection to the one question was not an objection to the foundation for the opinion that the motor vehicle accident had something to do with the findings of Dr. Lamberti. So I think it's very clear that there's no preservation of this error. Dr. Hertzman, attending, it wasn't preserved. How is it not speculation that the accident had something to do with this failure to heal or problem with that carpal tunnel surgery? Well, I think I'd like to back the court up even a little bit further because what I think is where I take issue with counsel's characterization of the record is we don't even have to get to this question about what happened in the motor vehicle accident. Dr. Hertzman and Dr. Farrell had a perfectly legitimate and appropriate foundation for their opinion that Dr. Hertzman did not deviate from the standard of care based on the medical records of the February 12, 2010 surgery. I mean, Dr. Hertzman went through. Dr. Hertzman in the absolutely quintessential Wilson versus Clark type of expert testimony testifies based on his medical records, which were very detailed, his own personal recollection, and he's able to testify. Here's what happened. Here's what happened during the surgery. Here's what my medical records say. I didn't touch that nerve. I did not cut the nerve. And here's all of the things that happened in the nine months that I saw the patient after the surgery. All of these findings that I have that are documented in the medical record show that there was no cutting of the nerve, and that's the only so-called deviation that Dr. Lamberti testified, that he causally connected to the problem that he says he viewed. So, breaking it down, what you are saying, as I understand it, is that the testimony of the defendant and Farrell who, bearing the results of the surgery standing alone, would be sufficient to support the verdict without any testimony of all of the other causes. Is that what you're saying? Without any testimony. Without any testimony. You don't need any testimony of other causes. That's correct. Is that what you're saying? That's correct. They don't even have to get that far. You know, the jury, this is a good argument that counsel may, if you were the jury, but this is the conflict in the facts. This is absolutely, I know we say this a lot when we're talking about a jury verdict after a medical malpractice case, but truly a classic battle of the experts. And counsel got up in closing and said, Well, you've got two people. If you believe Dr. Herbstman, then you've got to be fined for Dr. Herbstman. And if you believe Dr. Lamberti, you've got to fine him for the plaintiff. I mean, I don't know how you could set this up more differently. And the jury, you know, also put this in context and in fairness to the trial judge, who I have to submit in no way abused her discretion in denying a new trial. She saw the impact of Dr. Herbstman and Dr. Farrell on the jury. And then, you know, Dr. Herbstman is testifying live, and everybody is testifying. And one of the things that gets a little bit lost, I think, in a record like this, because the court doesn't have all of the diagrams and so on and so forth. They're saying here's this and here's that. And when you do this with fingers, this is what happens. And this was the nature of my test. The jury heard all of that. And then they also see Dr. Lamberti, who's testifying from Hawaii via, you know, video evidence deposition, and he made whatever impression he made on the jury. And I think the jury made the decision. Herbstman is telling the truth. Well, I think we understand the argument with the defendants and Farrell and why that should be sufficient in your argument to carry the day. But what about his argument, the other part of his argument, that Farrell's testimony was based on speculation, his opinion was based on speculation and conjecture? What's your response to that if we're going to consider that argument? Dr. Farrell gave testimony that was based on the medical records of the surgery, of the treatment that was in question. And that is precisely approved by Wilson v. Clark in all its progeny, you know, decisions of this court. A medical expert does not have to have. Examine the patient. Does not have to examine the patient, and that's absolutely clear. And he looked at all the records and he said, okay, according to these records, this is what happened. And this was appropriate and there was no violation of the standard of care and there was no nerve damage caused during the surgery. So I don't think, and to me, the irony of this is, Your Honors, that counsel is criticizing Dr. Farrell for not having, he did say at trial that he reviewed the medical records of Dr. Bernstein and he reviewed the medical records of Dr. Lamberti, but they weren't important to his opinion. And yet Dr. Lamberti did not even review the medical records of the surgery for which he was saying that Dr. Herbstman breached the standard of care. Think about the impact of that on the jury. And that was before the jury. Absolutely was before the jury. And Dr. Lamberti testified that, yeah, it's really good. So it kind of had a double whammy, I think, effect on Dr. Lamberti's credibility because he testified that it was important for him to know what happened during that first surgery so that he would know how to treat this patient. And the plaintiff really didn't know. She had some vague answers to those questions. Did she ever tell Dr. Lamberti that there had been a traffic accident in the interim? No. She said she didn't remember ever telling him and he didn't seem to know about it. He didn't say one word about the traffic accident. And this was another sort of strange twist that the plaintiff seemed to be trying to shift the burden of proof to the defense by saying, okay, they cross-examined Dr. Herbstman and there were objections, some of which were sustained and some of which weren't. Dr. Herbstman, why did your counsel bring that traffic accident to Dr. Lamberti's attention? I can't imagine why that would ever be the defense allegation. That was the traffic accident occurrence in Dr. Herbstman's medical records? Yes. So it wouldn't have been there. Yes. Dr. Lamberti would have seen them. So for a plaintiff to come to this court and say Dr. Farrell was speculating because he didn't say more about Dr. Lamberti's records, and yet by the same token, Dr. Lamberti didn't even ever ask for them. I think that that probably made a pretty good impact on the jury. I have a question about, in your brief, it's about pages 19 and 20, and I want to clarify for my own thought. You say something like, apparently in the closing argument, that the plaintiff failed to account for evidence of the mechanics of Dr. Herbstman's procedures. Is a plaintiff supposed to have recollection or knowledge of what a doctor does, especially if he or she is under some sort of anesthesia? No, I'm not sure what sentence you're referring to, but maybe it was not as clear as it should have been, Your Honor. I think if I was saying that the plaintiff should have clarified something, I probably meant in the brief. Well, here's what you say in the brief. Explaining the plaintiff's failure to account for evidence of the mechanics of Dr. Herbstman's procedure and attacking Dr. Lamberti's and plaintiff's credibility, defense counsel argued Dr. Lamberti's conclusions conflicted with the unreported evidence. Are you saying that, as opposed to plaintiff, that it wasn't proved that Dr. Lamberti didn't know the procedure? Because as I read it, I'm thinking, okay, I did have purple tongue surgery on both hands. I couldn't have known what the doctor did because I was sound asleep. No, I wouldn't have expected you to know, Your Honor, and I wouldn't expect any patient to know. Unfortunately, I think I now know, but I didn't then. The inartful – yeah, I know, I'm going like this as we're speaking. The inartful sentence, what I meant to say was defense counsel – and this is part of the – before the jury – defense counsel is making the point that the plaintiffs in their presentation didn't address the fact that here we – and they don't address it on appeal either, Your Honors, didn't address here's these records. They say this is what happened during the surgery. They don't say that that was an improper foundation. And so our position is I think that Dr. Herbstman's testimony was perfectly acceptable on the motor vehicle accident. It was not the fulcrum of the defense, though. The fulcrum of the defense was his own medical record saying here's what happened during the surgery. So that is our position. And, you know, unless the court has any further questions for me, we would ask the court to affirm them. If you have one. Sure. Because I meant to look it up yesterday as I was preparing and I forgot. I'm assuming that the res ipsa instruction came from the plaintiff? Oh, absolutely, Your Honor, absolutely. But it doesn't – and I did go back to look at that, and I've argued res ipsa in this course not too long ago. But I really don't think that it could aid the plaintiff at this juncture because, again, it relied on a finding that the injury occurred during the surgery. And that's exactly what the negligence, the regular negligence issues were as well. I'm lying. Your point is all of this evidence, all of these issues as to the two experts was presented to the jury, and they made a factual finding. Yes. Okay. That is our position, Your Honors. And we believe that the court should leave the verdict and the judgment intact. Okay. Thank you, Mr. Grant. Thank you very much, Your Honors. Mr. Garsky, you may respond. I have just a couple of things. The McGrath case that we cited was reversed, was reversed on other grounds. What we cited for was still good law as far as I understand. Really what it comes down to here is that no one, none of the defendants, none of the experts deny that when Dr. Lamberti opened up that hand, I'm sorry, opened up that hand, that there was a cut fascicle, cut fascicles. Also, no one says, no one denies that at the ends of these fascicles, there were bones, neuromas, and that they take a long time to grow. This all ties in with the automobile accident that needed to be created in order for Dr. Herbstman to make his speculation that even his own expert would not dare enter. And this is it. How did that nerve get cut? That's it. I didn't do it. Something else must have done it. The issue isn't simply I didn't do it because if that went to a jury, I would have happily argued that. But I was left with the problem of I didn't do it, a motor vehicle accident in which there was no evidence of injury to her wrist caused a severing of the nerve and that somehow this all happened despite the fact there were no facts. Every one of the cases I cite that have allowed a new trial have all stated that you can't, that an expert's conclusion is not sufficient unless it's backed by fact. Well, if Dr. Herbstman says in his records somewhere that he sees, he doesn't see this bruising, but he says at the time of the surgery, I did this, I did this, I did this, I didn't do this, and I didn't do this, he says those in his medical record, doesn't the jury have the right to consider that against any other evidence that's presented? In isolation, that would be correct. But at this trial, the issue was how did those nerves get cut? It's not simply I didn't do it, but thrown into the mix, and the problem is it was cut. He admits it was cut. Dr. Farrell never opines one way or another whether they're cut. He just simply said he didn't do it because he said he didn't do it. Well, doesn't Dr. Farrell actually say, or is it Dr. Herbstman that says, well, maybe when Lamberti went in to do the surgery and was trying to clean it up, maybe he cut it? Isn't that another area of speculation? In fact, Dr. Farrell didn't say that. Dr. Farrell simply said he didn't do it because he didn't do it. He never criticized the technique used by Dr. Lamberti, and that was, again, I mean, that's just, that was straight out of Herbstman, no one else. Why didn't Dr. Lamberti look at the records? Isn't that a little unusual if you're going to be doing a subsequent surgery to an area that's already been treated? Don't you want to know what happened? Well, he knew what happened. There was a carpal tunnel surgery with continuing problems,  and when he opened it up and he said he suspected, but he didn't want to go any further, that there was a problem with the prior surgery. He was being, let's say, generous as a fellow physician by not coming out and saying, I think there was a problem here. He identified a problem, the collapsing thumb. He identified issues, and going back into the records, I'm not sure what he would have seen. He actually would have seen nothing because the guy said, the person said, I didn't cut the nerve. Well, the collapsing thumb could have been from that, but maybe it could have been from something else. Maybe it was a degraded trapezius bone or something of that nature. But the curious aspect of this case is that once the graft was put in there, in that nerve, that she regained strength in that. So the issue being is that, in her own testimony, that did improve with the graft, and that was the only surgery done. So, again, there would be speculation whether something else, but there was evidence that she improved after the graft. The issue always was and always will be, how did that cut get there? And injected into this is a car crash that had nothing to do with anything. It gave the jury an opportunity to speculate as to whether a car crash, for which there was no injury to the wrist, could have caused a cut to a median nerve, which is highly improbable to begin with, but based on nothing. It was confusing. When she went back to see Dr. Herbstman a day or a couple days after the accident, didn't she complain about just about everything, her elbow, her shoulder? I never saw anything about hands, but she was in an accident where the airbag popped up, and that hurts. I mean, how did she separate all these injuries, and had all these injuries, rather, and never mentioned her hands? Did anybody question that? I did. I grilled her on that. I said, where does she mention her hands? You say deep bruising, and it's not beyond the kind of an ordinary person to understand that a bruise shows up immediately. I mean, that's the very purpose. A bruise shows up immediately, and by the next day it's discoloration, and nothing was seen. Dr. Herbstman's records were cleared, and he even testified. I didn't see any deep bruising, for heaven's sakes. So he was grilled on that issue. So your time has expired, so you need to go back to your room. I apologize. No, I think you're fine. People could be in car accidents all the time. People are in car accidents all the time. But just kind of like a corollary to the rule that in order to bring up injury to a previous body part, you have to have some expert come in, and opine as to this. But even then, the expert has to have some fact that that was actually injured. That's what's always lacking in this case. And the jury was allowed to speculate as to whether this could have been the cause of the nick. Because it's always the question, Your Honors, is what caused that nick, and that's the fulcrum of their argument, despite their saying otherwise, is that I've got another reason for this. Dr. William Burry did it even though there was no aromas. I mean, how could there be no aromas if he just cut it? Although then it must have been the accident. It must have been one of those things. It wasn't me, but it did happen, and these are the other reasons, and that's brain speculation. Thank you, Your Honors. I'd like to thank both counsel for the quality of the arguments here this morning. The matter, of course, will be taken under advisement and a written decision will issue in due course. We stand in adjournment to prepare for the next case. Thank you.